IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 AUG 13  PM 3: 30

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ AD

FRANCINE BUSH,

               **Plaintiff,**

-vs-

                                                **Case No.  A-14-CA-144-SS**

TEXAS DEPARTMENT OF ASSISTIVE AND
REHABILITATIVE SERVICES,

               **Defendant.**

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Texas Department of Assistive and Rehabilitative Services's Motion for Summary Judgment [#7], Plaintiff Francine Bush's Response [#9] thereto, Defendant's Reply [#10] thereto, Defendant's Supplement to Motion for Summary Judgment [#14], and Plaintiff's Supplemental Response [#15] thereto. Having considered the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is a Title VII employment discrimination case brought by Plaintiff Francine Bush, a Black woman, against her current employer, Defendant Texas Department of Assistive and Rehabilitative Services (DARS). Bush alleges DARS intentionally discriminated against her on the basis of her race when she applied for, and was subsequently denied, two promotions.[1]

---

[1] In her complaint, Bush further alleged DARS discriminated against her by denying her the opportunity to work overtime, denying her a raise, and burdening her with an excessive case load. Bush also alleged she was discriminated against in retaliation for her decision to file an employment discrimination complaint. Bush abandoned all of those allegations in her response to DARS's motion for summary judgment. *See* Resp. [#9] at 1. Accordingly, all of Bush's claims, save her claim of discrimination based upon the promotions, are hereby DISMISSED WITHOUT PREJUDICE.

The facts, recounted in the light most favorable to Bush, are as follows. Bush, who has been employed by DARS since 2001, presently holds the position of Disability Specialist III within DARS's Disability Determination Services (DDS) division. The DDS division is comprised of multiple "units," each of which are responsible for evaluating and making determinations regarding Social Security disability claims. Each unit is managed by an Operations Unit Manager (OUM), who is responsible for evaluating the Disability Specialists working in the unit and various other managerial tasks.

On May 15, 2012, and May 29, 2012, Bush submitted employment applications for two open OUM positions. The positions were posted by two members of DARS upper-level management, Ed Cardenas and Joan Roberts-Scott. Cardenas and Roberts-Scott were responsible for screening the applications received for each of the positions and selecting the candidates who would be interviewed. Cardenas and Roberts-Scott performed the screenings using an "Optional Matrix Tool for Screening Applications," a form used to assign numerical scores to each applicant for a position. Because Bush was not among the five top-scoring candidates for the position posted by Cardenas, or among the seven top-scoring candidates for the position posted by Roberts-Scott, Bush did not receive an invitation to interview for either of the positions.

The Matrix Tool provides instructions for the person screening the applications. First, the screener is directed to copy the selection criteria listed on the job posting onto the form for each candidate, using the same selection criteria for each candidate's evaluation. *See* Supp. Mot. Summ. J. [#14-5] Ex. 5 (Matrix Tool) at 1. Second, the screener must "[d]etermine if all . . . selection criteria are equally important"; if so, the screener assigns all criteria a value of 1. *Id.* If the criteria vary in importance, the screener must "assign a number (from 1–10) to each criterion, representing

-2-

how important that criterion is in relation to the other criteria ('1' being least important, and '10' being most important)." *Id.* Third, the screener then "[r]eview[s] the application and relevant information from the master personnel file . . . to compare the applicant's qualifications and work experience against the initial selection criteria listed." *Id.* Fourth, the screener rates each candidate on a scale of zero to four, from, respectively, "No documented experience or skill" to "Exceptional level of experience or skill," as to each criterion. *Id.* Finally, the screener calculates each candidate's score by multiplying the weight assigned to each criterion by the score assigned to each criterion, then adding the numbers together. *Id.* According to the form, applicants with the highest scores should then be selected for interviews. *Id.*

Using the Matrix Tool, Cardenas assigned Bush a score of 74, which ranked her ninth among the sixteen applicants for the first OUM position; Roberts-Scott assigned Bush a score of 81, which ranked her twenty-first out of twenty-two applicants for the second OUM position. Matt Jagielko, who is white, scored 110 at screening, ranked first in the applicant pool, and was ultimately offered the first position. Duane Flores, who is Hispanic, scored 145 at screening, ranked first in the applicant pool, and was ultimately offered the second. Bush contends Cardenas and Roberts-Scott scored her applications in a manner that raises an inference of racial discrimination, as she was allegedly better qualified than both Jagielko and Flores.

On March 24, 2013, Bush filed a charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission. *See* Def.'s Mot. Summ. J. [#7-7] Ex. 6. While the record does not reflect the outcome of her filing, there is no dispute Bush has exhausted her administrative remedies. Bush initiated this action by filing her complaint on February 17, 2014. The instant motion for summary judgment followed.

**Analysis**

I.    **Legal Standard**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

-4-

supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.     Application

DARS argues it is entitled to summary judgment because Bush has failed to show DARS's proffered reason for denying her the promotions—namely, that Bush was not the most qualified candidate—was merely a pretext for discrimination. The Court agrees.

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (internal quotation marks and citations omitted). Intentional discrimination can be established through either direct or

circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Because Bush has not pleaded any facts showing direct discrimination, her claim is analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see also McDonnell Douglas*, 411 U.S. at 802. To do so, the plaintiff must show she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff successfully establishes her prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the employer offers such a justification, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish that the employer's proffered reason is pretextual. *Vaughn*, 665 F.3d at 636.

While it is not entirely clear from the parties' rather spare briefing, it appears there is no real dispute Bush has established her prima facie case: Bush is Black, DARS does not argue she was not qualified for the OUM positions, she was denied the positions, and Jagielko and Flores, who received the positions, are white and Hispanic, respectively. Assuming Bush has established her prima facie case, the burden shifts to DARS to articulate a nondiscriminatory reason for denying Bush the promotions. DARS has done so by pointing to the fair-to-low scores Bush received from Cardenas and Roberts-Scott when they evaluated the candidate pool using the Matrix Tool. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881–82 (5th Cir. 2003) (stating employer's

explanation it selected the best qualified candidates for the position was legitimate and nondiscriminatory).

Thus, the burden shifts back to Bush to show DARS's proffered reason is pretextual. Bush could make that showing either by (1) demonstrating DARS's reason is "false or 'unworthy of credence'"; or (2) proving she is "'clearly better qualified' than the person[s] selected for the position[s]." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356–57 (5th Cir. 2001)). Bush has done neither. Her pleadings contain only two arguments: first, she claims the Matrix Tool is inherently subjective, such that the person performing the screening "can award points to achieve the result desired"; and second, she contends she was better qualified for both positions than Jagielko and Flores. Neither argument is persuasive.

As for the inherent subjectivity of the Matrix Tool, "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Id.* at 882 (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) ("Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII.")). Bush has offered no evidence, save her own unsupported speculation, that the Matrix Tool's subjective criteria were used to mask racial discrimination. Further, as DARS points out, the candidates selected to interview for both OUM positions were a diverse pool: for the position posted by Cardenas, three out of five were Black (and one was Hispanic), *see* Supp. Mot. Summ. J. [#14-3], and for the position posted by Roberts-Scott, two out of seven were Black (and one was Hispanic), *see id.* [#14-4].

Concerning Bush's qualifications as compared with Jagielko's and Flores's, Bush has failed to show she is "clearly better qualified" than Jagielko or Flores for either of the OUM positions. In her supplementary response, Bush sets forth several tables comparing her qualifications with Jagielko and Flores's by (1) number of years with DARS at the time of application; (2) number of years of managerial experience at the time of application; (3) "[m]anagerial training"; and (4) "[t]ype of [d]egree." Supp. Resp. [#15] at 2, 3. Candidates for the OUM positions, however, were evaluated according to a different set of criteria, *see* Mot. Summ. J. [##7-12, -13] Exs. 11, 12, and Bush makes no effort to explain the connections between the qualifications she identifies and the criteria Cardenas and Roberts-Scott actually used to evaluate the OUM candidates.

Bush, moreover, incorrectly characterizes Jagielko's managerial experience. While Bush's table represents that Jagielko has zero years of managerial experience in contrast with Bush's seven years of managerial experience as the executive director of a church, Jagielko's application for the OUM position shows he has nearly four years of managerial or supervisory experience in the medical field. *See* Supp. Resp. [#15-3] Ex. 2 at 6 (showing Jagielko spent over two-and-a-half years managing his own outpatient counseling service and spent one year in a supervisory/managerial role in a behavioral health center). Further, while Bush is correct she spent more time in a managerial role as a military commander than Flores spent in a managerial role in the retail sector, Bush fails to note that Flores's previous position as a DARS Program Consultant required him to "[a]ssist[] the OUM in planning and organizing unit operations," "[p]rovide[] on-site management of unit day-to-day performance during OUM absences," assign work, and monitor the performance of other employees, among other duties relevant to knowledgeability of and experience with an OUM's duties and responsibilities. Supp. Mot. Summ. J. [#14-7] Ex. 7 at 9; *see id.* (describing duties of a

Program Consultant).  In any event, "[t]he fact that one candidate has 'better education, work experience, and longer tenure with the company do[es] not establish that [s]he is clearly better qualified'" than another.  *Churchill v. Tex. Dep't of Crim. Justice*, 539 F. App'x 315, 321 (5th Cir. 2013) (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)).

In sum, viewing the record in the light most favorable to Bush, the Court concludes Bush has provided little, if any, evidence of racial discrimination in DARS's selection process save her own bare conjecture that racial discrimination occurred.  Bush has failed to raise a legitimate fact issue as to whether DARS's stated non-discriminatory reason for declining to award Bush either promotion—that Jagielko and Flores were better qualified—is pretextual.  DARS is therefore entitled to summary judgment.

## Conclusion

Accordingly:

IT IS ORDERED that Defendant Texas Department of Assistive and Rehabilitative Services's Motion for Summary Judgment [#7] is GRANTED as to Plaintiff Francine Bush's Title VII racial discrimination claim based on failure to promote; and

IT IS FINALLY ORDERED that Plaintiff Francine Bush's remaining claims are DISMISSED WITHOUT PREJUDICE.

SIGNED this the _12th_ day of August 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE